**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION**

BIANCA MICHELLE JONES,

    *Plaintiff*,

  v.

EXPERIAN INFORMATION SOLUTIONS, INC., et al.,

    *Defendants*.

Case No. 2:24-cv-02325-SHL-cgc

**EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION
TO COMPEL ARBITRATION AND SUPPORTING MEMORANDUM OF LAW**

Experian Information Solutions, Inc. ("EIS"), by and through its undersigned counsel, pursuant to sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16, respectfully moves to compel arbitration of all claims that plaintiff, Bianca Jones, pleads in this matter.

## **INTRODUCTION**

This is an action under the Fair Credit Reporting Act. Plaintiff alleges that EIS reported inaccurate tradelines about her in a consumer report. Pursuant to Plaintiff's written agreement, EIS elects to adjudicate Plaintiff's claims in arbitration before the American Arbitration Association.

The outcome of this motion should be the same as that in *Meeks v. Experian Info. Sols. Inc.*, 2022 WL 17958634 (9th Cir. Dec. 27, 2022), *DeVries v. Experian Info. Sols. Inc.*, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017), *Ferrell v. Experian Info. Sols. Inc.*, 2024 WL 158103 (C.D. Cal. Jan. 11, 2024), *McLees v. Experian Info. Sols. Inc.*, 2024 WL 135940 (C.D. Cal. Jan. 11, 2024), *Topolewski v. Experian Data Corp.*, 2024 WL 414968 (C.D. Cal. Feb. 2, 2024), *Evans v. Experian Info. Sols. Inc.*, 2023 WL 4714078 (C.D. Cal. July 21, 2023), *Sauer v. Experian Info. Sols. Inc.*, 2022 WL 2163016 (C.D. Cal. May 12, 2022), *Solis v. Experian Info. Sols., Inc.*, 629 F. Supp. 3d 1016 (C.D. Cal. 2022), *Scribner v. Trans Union LLC*, 2024 WL 3274838 (E.D. Cal. July 2, 2024), *Saucedo v. Experian Info. Sols. Inc.*, 2023 WL 4708015 (E.D. Cal. July 24, 2023), *Capps v. Experian Info. Sols. Inc.*, 2023 WL 3030990 (E.D. Cal. Apr. 21, 2023), *Baker v. Experian Info. Sols. Inc.*, 2024 WL 3082644 (S.D. Ind. June 20, 2024), *George v. Experian Info. Sols. Inc.*, 2024 WL 3013146 (D. Md. June 14, 2024), *Hanson v. Experian Info. Sols. Inc.*, 2024 WL 2974160 (N.D. Ga. June 12, 2024), *Myers v. Experian Info. Sols. Inc.*, 2024 WL 2278398 (D. Ariz. May 20, 2024), *Garcia v. Experian Info. Sols. Inc.*, 2024 WL 1117912 (N.D. Cal. Mar. 13, 2024), *Oestreicher v. Equifax Info. Servs., LLC*, 2024 WL 1199902 (E.D.N.Y. Mar. 20, 2024), *Pecoraro v. Experian Info. Sols. Inc.*, 2023 WL 8525114 (S.D. Fla. Dec. 6, 2023), accepting

Report and Recommendation in Case 9:23-cv-80789-RLR (S.D. Fla. Jan. 16, 2024), *Pipoly v. Experian Info. Sols. Inc.*, 2023 WL 5184188 (N.D. Ga. Aug. 2, 2023), report and recommendation adopted, 2023 WL 5438171 (N.D. Ga. Aug. 21, 2023), *Abukar v. Experian Info. Sols. Inc.*, 2023 WL 3394827 (E.D. Wis. Apr. 11, 2023), *Arciniega v. Experian Info. Sols. Inc.*, No. CV-23-00245-PHX-SPL, 2023 WL 6803084 (D. Ariz. Oct. 12, 2023), *Enright v. Experian Info. Sols. Inc.*, Case 1:23-cv-01230-MSN-IDD (E.D.V.A. Jan. 29, 2024) (ECF No. 28), *Espinosa v. Experian Info. Sols. Inc.*, Case 1:23-cv-01444-MSN-IDD (E.D.V.A. Jan. 29, 2024) (ECF No. 20), *Smith v. Experian Info. Sols. Inc.*, 2023 WL 6057377 (D. N.J. Sept. 14, 2023), *Yates v. Experian Info. Sols. Inc.*, 2023 WL 4747386 (S.D. Tex. July 25, 2023), accepting Report and Recommendations, 2023 WL 5279467 (S.D. Tex. Aug. 16, 2023), *Kinkle v. Experian Info. Sols. Inc.*, 2023 WL 4105804 (S.D. Ind. June 21, 2023), *Salazar v. Experian Info. Sols. Inc.*, 2023 WL 3529635 (W.D. Mo. May 15, 2023), *Solis v. Experian Info. Sols. Inc.*, 2023 WL 4474322 (M.D. Fla. July 11, 2023), *Levy v. Experian Info. Sols. Inc.*, 2023 WL 2644352 (S.D.N.Y. Mar. 27, 2023), *Alvarez v. Experian Info. Sols. Inc.*, 2023 WL 2519249 (E.D.N.Y. Mar. 15, 2023), *Cimillo v. Experian Info. Sols. Inc.*, 2023 WL 2473403 (S.D.N.Y. Mar. 13, 2023), *Johnson v. Southwest Recovery Services, Inc.*, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023), accepting Report and Recommendations in *Johnson v. Southwest Recovery Services, Inc.*, 2023 WL 1944127 (N.D. Tex. Jan. 24, 2023), *Morgan v. Experian Info. Sols. Inc.*, 2022 WL 681359 (W.D. Wash. Mar. 4, 2022), *Chong v. Experian Info. Sols. Inc.*, 2022 WL 16832742 (D. Haw. Nov. 8, 2022), *Stephens v. Experian Info. Sols. Inc.*, 614 F. Supp. 3d 735 (D. Haw. 2022), *Roberson v. Experian Info. Sols. Inc.*, 2022 WL 62270 (W.D. Tex. Jan. 5, 2022), *Coulter v Experian Info. Sols. Inc.*, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021), and *Tadic v. Experian Info. Sols. Inc.*, 2019 WL 11499103 (N.D. Ga. Mar. 13, 2019).

Like the plaintiffs in the above-cited cases, Plaintiff a member of CreditWorks, a credit monitoring membership with EIS's affiliate, ConsumerInfo.com, Inc. ("CIC") (which does business as Experian Consumer Services ("ECS")). As in those cases, Plaintiff's membership in CreditWorks predates the filing of this lawsuit. There, like here, when Plaintiff enrolled in CreditWorks, she too agreed to the Terms of Use governing that service—a contract containing an Arbitration Agreement. The Arbitration Agreement defines "ECS" to include its "affiliates." During the entire time that Plaintiff has been enrolled in CreditWorks, EIS has been an affiliate of ECS, as courts consistently have found. *See*, *e.g.*, *Cimillo*, 2023 WL 2473403, at *5 n.7 ("[N]umerous courts considering the same or similar agreements involving EIS have found EIS is properly considered an affiliate under the same or similar Arbitration Agreements.").

The Arbitration Agreement provides that Plaintiff and "ECS"—which, again, is defined under the contract to include its affiliate, EIS—agreed to arbitrate "all disputes and claims between us" that arise out of, or relate to, her CreditWorks membership. As court-after-court has confirmed, as a party to the Arbitration Agreement contained therein (by virtue of how ECS is defined under the contract), EIS may directly enforce the arbitration provision. *See Levy*, 2023 WL 2644352, at *6-7 ("[T]he Court agrees with Defendant [EIS] that it is an affiliate of ECS and a party to the contract."); *Meeks*, 2022 WL 17958634, at *2 (same); *Cimillo*, 2023 WL 2473403, at *5 (same); *Alvarez*, 2023 WL 2519249, at *6 (same); *Roberson*, 2022 WL 62270, at *2 (same); *Stephens*, 2022 WL 2716177, at *1 (same). At a minimum, however, EIS is a third-party beneficiary of the contract. *Alvarez*, 2023 WL 2519249, at *6 ("Even if [EIS] could not enforce the Arbitration Agreement as a party, under a third-party beneficiary theory, [EIS] may do so.").

The Arbitration Agreement in the CreditWorks Terms of Use delegates "all issues" to an arbitrator—including all questions regarding arbitrability, enforceability and scope. *Solis v.*

319446613.1

*Experian Information Solutions, Inc.*, Case 8:22-cv-00102-CJC-KES, 2022 WL 4376077, at *2 (C.D. Cal. Sept. 21, 2022); *Stephens*, 2022 WL 2716177, at *6 (holding same). The contract also incorporates the AAA rules. Thus, if there is any dispute as to the arbitrability of Plaintiff's claims, an arbitrator is to resolve such issues. *See*, *e.g.*, *Levy*, 2023 WL 2644352, at *9 (finding that the delegation clause and incorporation of the AAA Rules shows "the clear and unmistakable intent of the Parties to submit arbitrability determinations to the arbitrator").

Thus, under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, EIS respectfully moves for an order compelling this matter to arbitration, as required under Plaintiff's written agreement, and staying this action until arbitration has been completed.

## STATEMENT OF FACTS

On December 6, 2018, Plaintiff enrolled in CreditWorks. *See* accompanying Declaration of Dan Smith ("Smith Decl."), ¶ 3. In order to successfully enroll, Plaintiff had to complete two webforms. *Id*. The first form required Plaintiff to enter her personal information—*i.e.*, her name, address, phone number, and e-mail address. *Id*. After she did so, Plaintiff had to click the "Submit and Continue" button on the form to continue with the enrollment process. *Id*. A true and correct representation of the first webform as it would have appeared when Plaintiff enrolled in CreditWorks is attached as Exhibit 1 to the Smith Declaration. *Id*. Plaintiff clicked the "Submit and Continue" button, and was presented with a second form to complete. *Id*. Plaintiff would not have been able to successfully enroll in CreditWorks unless she clicked that button. *Id*.

The second webform required Plaintiff to enter her social security number, date of birth, and a username and password. *Id.* Immediately below the boxes to enter and confirm her password, was the following disclosure: "By clicking "Submit Secure Order": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad

Targeting Policy." *Id*.  A true and correct representation of the webform as it would have appeared when Plaintiff enrolled in CreditWorks is attached as Exhibit 2 to the Smith Declaration.  *Id*.

The phrase "Terms of Use Agreement" in the disclosure above was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement.  *Id*., ¶ 4.  That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use.  *Id*.  Thus, before clicking the "Submit Secure Order" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "Terms of Use Agreement."  *Id*.  When a consumer clicked on the "Terms of Use Agreement" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement.  *Id*.  Immediately below the disclosure was a large purple button that reads:  "Submit Secure Order."  *Id*.  The webform, the disclosure, and the "Submit Secure Order" button appeared on a single webpage.  *Id*.

After entering her information, Plaintiff clicked the "Submit Secure Order" button, thereby accepting and agreeing to the Terms of Use Agreement.  *Id*., ¶ 5.  Plaintiff would not have been able to successfully enroll in CreditWorks unless she clicked that button.  *Id*.  A true and correct copy of the Terms of Use that was in effect when Plaintiff enrolled in CreditWorks is attached as Exhibit 3 to the Smith Declaration.  After enrolling, Plaintiff continuously remained a member and used the service, including after the Terms of Use in effect at the time she filed this lawsuit came into effect.  *Id*.  A true and correct copy of the version of the Terms of Use Agreement in effect at the time Plaintiff filed this lawsuit is attached as Exhibit 4 to the Smith Declaration.  *Id*.[1]

Every version of the Terms of Use that was in effect during Plaintiff's enrollment contains an Arbitration Agreement, which requires her to litigate, among other things, all claims against

---

[1] On March 4, 2024, Plaintiff cancelled her membership.  *Id*.  She filed this lawsuit soon thereafter.

- 5 -

"ECS" that "relate to" or "arise out of" her membership in arbitration. *Id.*, ¶ 6. The Arbitration Agreement applies to "claims that may arise after the termination of this Agreement." *Id.* The Arbitration Agreement and "Overview and Acceptance of Terms" section of the contract defines "ECS" to include its "affiliates (including, but not limited to, Experian Information Solutions, Inc.) . . . ." *Id.* During the entire time that Plaintiff has been enrolled, EIS has been an affiliate of ECS. *Id.* By including EIS (an affiliate) within the definition of "ECS," the Terms of Use make EIS a party to the contract, as well as a party to the Arbitration Agreement contained within that contract. *Id.* Moreover, by including EIS within the "Overview and Acceptance of Terms" section, as well as within the definition of ECS in the Arbitration Agreement, the parties intended for EIS to benefit under the contract. *Id.* Additionally, the Arbitration Agreement expressly incorporates the AAA rules. *Id.*

Every version of the Terms of Use Agreement in effect during Plaintiff's enrollment has a section entitled, "Amendments," which advised her that she would be bound by the then-current Terms of Use each time she "order[ed], access[ed], or use[d]" any of the Services or Websites described in the agreement: "Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement." *Id.*, ¶ 7 and Ex. 4.

At all times relevant to this action, EIS contributed to the services that CreditWorks subscribers receive by providing regular access to how information appears in their EIS credit files, including changes to their credit file information. *Id.*, ¶ 8. Further, all CreditWorks subscribers are required to provide written authorization under the FCRA to obtain their credit report and/or credit score(s) on a recurring basis from EIS through CreditWorks. *Id.* The Terms of Use cover the provision of "Services," which is defined to include services to which EIS

- 6 -
319446613.1

contributed as the provider of credit information—including CreditWorks and the provision of "credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking (including all the data and information contained therein), and the receipt of any alerts notifying [consumers] of changes to the information contained in [their] credit report(s)." *Id*.

## LEGAL ARGUMENT

I.   **THE COURT SHOULD COMPEL THIS MATTER TO ARBITRATION**

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Pursuant to the FAA, arbitration must be compelled where, as here: (1) a valid agreement to arbitrate exists; and (2) the arbitration agreement encompasses the claims at issue. *See Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Arbitration clauses will be enforced unless the party resisting arbitration can show that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). The resisting party's burden is significant, as courts are required to "'rigorously enforce' arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). *See also Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005).

### A.     A Valid Agreement to Arbitrate Exists

State contract formation law determines the validity of arbitration agreements. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Plaintiff is a citizen of Tennessee. ECF No. 1, ¶ 15. Under Tennessee choice-of-law principles, absent a choice-of-law clause, "a contract is presumed to be made with reference to the law of the place where it was entered into[.]" *Williams v. Smith*, 465 S.W.3d 150, 154 (Tenn. Ct. App. 2014) (citing *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973)). "For contract claims, Tennessee follows the rule of l*ex loci contractus*, which provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed, absent a contrary intent." *Evans v. Walgreen Co.*, 813 F. Supp. 2d 897, 915 (W.D. Tenn. 2011), aff'd, 559 F. App'x 508 (6th Cir. 2014). As the Terms of Use does not have a choice of law provision, Tennessee law applies. *Id.*

Like its federal counterpart, Tennessee law treats arbitration agreements like any other contracts. *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 723 (Tenn. 2024) ("Both the Federal Arbitration Act and corresponding Tennessee statutes make clear that 'agreements to arbitrate disputes should be treated in the same manner as other contracts.'") (quoting *Harvey ex rel. Gladden v. Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 266 (Tenn. 2017)). "Federal courts have consistently upheld clickwrap agreements." *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1275 (M.D. Tenn. 2020) (collecting cases).

As a matter of law, Plaintiff agreed to the Terms of Use because: (1) she had clear notice of the Terms of Use at the time she enrolled, (2) she was admonished that, by clicking an adjacent

- 8 -

319446613.1

button, she was agreeing to be bound by the Terms of Use; and (3) she clicked the button, thereby manifesting his assent to the Terms of Use. Courts that have construed the CreditWorks signup process have concluded that design and layout of the website placed users on notice that they were agreeing to be bound by the Terms of Use. *See, e.g.*, *Capps*, 2023 WL 3030990, at *3-*4 ("[T]he court finds that a reasonable user would have seen the notice and would have been able to locate the Terms of Use Agreement via the hyperlink."); *Levy*, 2023 WL 2644352, at *7 ("Plaintiff was provided with reasonably conspicuous notice of the arbitration agreement in the 2019 TOU."); *Cimillo*, 2023 WL 2473403, at *5-7 ("The Court finds that the undisputed facts indicate the webpage design presented, and the language used in the July 2019 TOU, clearly and conspicuously communicated the terms of the Arbitration Agreement to plaintiff, and that plaintiff affirmatively indicated she agreed to them."); *Tadic*, 2019 WL 11499103, at *2 ("The Plaintiff is bound by the Terms and Conditions, including the agreement obligating her to arbitrate on an individual basis, her claims against ConsumerInfo.com, Inc. or its parent and affiliated entities. The Plaintiff's act of clicking on the SUBMIT SECURE ORDER button signified her acceptance of the Terms and Conditions."); *DeVries*, 2017 WL 733096, at *6 ("The text containing the Terms and Conditions hyperlink was located directly above that button and indicated that clicking "Submit Secure Purchase" constituted acceptance of those terms'"). This Court should follow this well-worn path.

### B. EIS May Directly Enforce The Arbitration Agreement

Arbitration agreements, like all contracts, are enforced according to their plain terms. *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021). Based upon the plain terms of the contract, EIS's status as a party to the Arbitration Agreement in the CreditWorks Terms of Use is well-established. The Ninth Circuit so held in *Meeks*. *See Meeks*, 2022 WL 17958634, at *2 ("Because the district court's denial of the motion to compel arbitration was the result of a legal

error and the record is sufficiently developed to allow us to do so, we hold that [EIS] is a party to the arbitration provision."). So has every other court to consider the issue. *See*, *e.g.*, *Capps*, 2023 WL 3030990, at *5-*6 ("[T]he court concludes that defendant [EIS] was a party to the Arbitration Agreement."); *Levy*, 2023 WL 2644352, at *6-7 ("[T]he Court agrees with Defendant [EIS] that it is an affiliate of ECS and a party to the contract."); *Alvarez*, 2023 WL 2519249, at *6 ("There is no reasonable basis to find that Plaintiff has not assented to arbitration with [EIS]."); *Roberson*, 2022 WL 62270, at *2 (same); *Stephens*, 2022 WL 2716177, at *1 (same).

These holding comport with the plain language of the contract. The "Overview and Acceptance of Terms" section defines ECS to include its affiliates, such as EIS. Smith Decl., Ex. 4. The Arbitration Agreement contained within the Terms of Use does the same. *Id*. Indeed, it includes a straightforward, bilateral promise: "ECS and you agree to arbitrate all disputes and claims between us that arise out of or relate to this Agreement, which includes any Information you obtain through the Services or Websites, to the maximum extent permitted by law[.]" *Id*. And the Arbitration Agreement clearly defines ECS to include it "parent entities, subsidiaries, [and] affiliates (including Experian Information Solutions, Inc.) . . . ." *Id*. As an affiliate of ECS, EIS is swept within the definitions of "ECS" and "us" under the Arbitration Agreement, and thus qualifies as a promisee (and promisor) entitled to enforce the Arbitration Agreement that Plaintiff entered. *See Levy*, 2023 WL 2644352, at *6-7; *Meeks*, 2022 WL 17958634, at *2; *Alvarez*, 2023 WL 2519249, at *6; *Roberson*, 2022 WL 62270, at *2.

In short, by disclosing to users they are agreeing to arbitrate with ECS's affiliates, and requiring affirmative action by Plaintiff to assent to those terms, Plaintiff is bound by the Terms of Use and its obligation that she arbitrate her claims against EIS. *See Meeks*, 2022 WL 17958634, at *1-*2; *Roberson*, 2022 WL 62270.

319446613.1

## C. At A Minimum, EIS May Compel Arbitration As A Third-Party Beneficiary

Even if the Court concludes that EIS cannot compel arbitration as a party to the Arbitration Agreement, EIS may nonetheless compel arbitration as a third-party beneficiary. And, if there is any dispute over whether EIS may enforce the arbitration agreement as a non-party, that issue is to be resolved by an arbitrator.

To start, the Arbitration Agreement expressly incorporates the AAA Rules. Smith Decl., Ex. 4 ("[T]he AAA Rules shall govern the parties' dispute[.]"). In the Sixth Circuit and elsewhere, "incorporation of AAA rules (or similarly worded arbitral rules) provides clear and unmistakable evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (collecting cases). Furthermore, the Arbitration Agreement expressly provides that "all issues" are for the arbitrator to decide, and the arbitrator has been vested with "exclusive authority" to resolve issues over the "scope and enforceability" of the arbitration provision. Smith Decl., Ex. 4. The Supreme Court has found that this exact delegation language provides "clear and unmistakable" evidence that questions over arbitrability are to be decided by an arbitrator. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) (finding "clear and unmistakable" delegation of arbitrability questions where clause provided that arbitrator "shall have exclusive authority to resolve any dispute relating to the ... enforceability ... of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.").

Under these principles, courts regularly have sent questions about a third party's ability to enforce an arbitration agreement against a signatory to an arbitrator for resolution in the first instance. As the court explained in *Mobile Real Estate, LLC v. NewPoint Media Group, LLC*, 460 F. Supp. 3d 457 (S.D.N.Y. 2020), "a corporate relationship is a 'sufficient relationship'" to

allow the question of arbitrability to be delegated. *Id*. at 477 (quoting *Int'l Eng'g & Constr. S.A. v. Baker Hughes*, 399 F. Supp. 3d 194, 203 (S.D.N.Y. 2019) (determining that because the non-signatories had a "parent/subsidiary relationship" with one of the signatories, there was a sufficient relationship between them, and the question of arbitrability could be delegated to an arbitrator) (collecting cases)); *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 106 (S.D.N.Y. 2017) (same). Here, there is an undisputed relationship between ECS—an unquestioned signatory to the contract—and EIS: They are corporate affiliates and share a common parent. Thus, "where a party seeking to avoid arbitration is a signatory to an arbitration agreement which incorporates rules that delegate arbitrability questions to the arbitrator, a court need not reach the issue of whether a non-signatory may compel arbitration, because that is an issue properly resolved by the arbitrator." *Mobile Real Estate*, 460 F. Supp. 3d at 477.

Courts across the country are in accord in evaluating the Terms of Use applicable to CreditWorks memberships. For example, in *Sauer v. Experian*, the court granted EIS's motion to compel arbitration under the Terms of Use, finding that "the dispute over whether Experian is a third-party beneficiary should go to the arbitrator." 2022 WL 2163016, at *1-2 ("Plaintiff agreed that 'the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement.'"); *see also Stephens*, 2022 WL 2716177, at *6 ("[T]his court concludes that the parties [to the CreditWorks contract] have clearly and unmistakably delegated the issue of arbitrability to the arbitrator.").

Numerous courts, on similar facts, are in accord. *See Portland General Electric Co. v. Liberty Mutual Insurance Co.*, 862 F.3d 981, 983–84 (9th Cir. 2017) (holding that because the contract incorporated rules similar to those found in the AAA, PGE had "delegated to the arbitrators" questions such as "whether PGE ha[d] . . . agreed to arbitrate its dispute against the

[s]ureties"); *Blanton*, 962 F.3d at 843–44, 852 (6th Cir. 2020) (same); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (sending the question of "[w]hether a particular arbitration provision may be used to compel arbitration between a signatory and a non-signatory" to the arbitrator because the arbitration agreement incorporated the AAA Rules); *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 472-474 (1st Cir. 1989) (whether a nonsignatory could enforce the arbitration agreement against [the plaintiff] was an issue that involved the existence and validity of the arbitration agreement and therefore fell within the arbitrator's purview); *In re Intuniv Antitrust Litigation*, Civil Action No. 1:16-cv-12653-ADB, 2021 WL 517386, at *4-8 (D. Mass. Feb. 11, 2021) (holding that "because both [contracts] delegate the arbitrability determination to the arbitrator, it is for an arbitrator, rather than the Court, to decide whether nonsignatory Shire can compel Meijer to arbitrate its claims"); *Visibility Corp. v. Schilling Robotics, LLC*, No. 10-cv-12280, 2011 WL 5075816, at *4–5 (D. Mass. Oct. 25, 2011) (same); *Robertson v. Enbridge (U.S.) Inc.*, No. 19-cv-01080, 2020 U.S. Dist. LEXIS 139381, at *10–13 (W.D. Pa. Aug. 4, 2020) (finding that once a court determined that the contract delegated the adjudication of arbitrability to the arbitrator, the defendant's status as a nonsignatory did not affect the calculus).

But even if this Court were to decide the question, EIS plainly may compel arbitration as a third-party beneficiary. Under Tennessee law, "third parties may enforce a contract if they are intended beneficiaries of the contract." *Owner-Operator Independent Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001) (citing *Willard v. Claborn*, 220 Tenn. 501, 419 S.W.2d 168, 169 (1967)). Applying this and equivalent standards, courts have held over and over again that a party named in the arbitration agreement, either directly or as a member of a specified class, can enforce as a third-party beneficiary. *See*, *e.g.*, *Kanoff v. Better Life Renting*

*Corp.*, 2008 WL 442145, at *4-5 (D.N.J. Feb. 14, 2008) (enforcing arbitration agreement on a motion brought by corporate affiliate); *Lacayo v. BMW of N. Am. LLC*, 2020 WL 3971307, at *1 (N.D. Cal. July 13, 2020) (compelling Lacayo to arbitrate his claims against BMW of North America because the arbitration clause in his agreement with BMW Financial Services "explicitly applie[d] to affiliates" like BMW of North America); *Herrera v. Verra Mobility Corp.*, No. CV-20-00515-PHX-DWL, 2020 WL 6781269, at *6 (D. Az. Nov. 18, 2020) (allowing ATS Processing and ATS Consolidated to enforce an arbitration agreement because the contract "defined 'us' as encompassing vendors and third-party service providers" like them); *Banh v. Am. Honda Motor Co.*, Case No. 2:19-cv-05984-RGK-AS, 2020 WL 5035095, at *5 (C.D. Cal. July 28, 2020) (allowing Honda to "invoke the right to the benefits of the arbitration agreements" in question because one of the parties (Acura) was "defined to include Honda"); *Greater N.Y. Mut. Ins. Co. v. Rankin*, 298 A.D.2d 263, 263 (N.Y. App. Div. 2002) (third parties may enforce arbitration agreements where "the right of the nonsignatory is expressly provided for in the agreement"); *Fikham v. BMW of North America LLC*, No. 19-03963 VAP, 2019 WL 6721626, at *2 (C.D. Cal. Oct. 15, 2019) (same); *Hacohen v. BMW of North America, LLC*, Case No. CV 21-0464-MWF (JEMx), 2021 WL 4352364, at *4 (C.D. Cal. July 23, 2021) (same).

Under this authority, EIS—an "affiliate" defined as part of "ECS" for purposes of the Arbitration Agreement and contract as a whole—qualifies as a third-party beneficiary entitled to enforce the Arbitration Agreement. *Alvarez*, 2023 WL 2519249, at *6 ("Even if [EIS] could not enforce the Arbitration Agreement as a party, under a third-party beneficiary theory, [EIS] may do so.").

**D.      An Arbitrator Is To Decide The Arbitrability Of Plaintiffs' Claims**

If there is any dispute over whether Plaintiff's claims fall within the scope of the Arbitration Agreement, that issue also is to be decided by an arbitrator. Smith Decl., Ex. 4 ("All issues are for the arbitrator to decide . . . ."). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein*, 139 S.Ct. at 527–30; *Coulter*, 2021 WL 735726 at *4 (finding that the Terms of Use's delegation clause "constitutes a 'clear and unmistakable' delegation clause under *Henry Schein* and delegates the exclusive authority to resolve 'all issues' to the arbitrator, including the 'scope and enforceability' of the Arbitration Provision"); *Stephens*, 2022 WL 2716177, at *6 (same).

**II.     THE ACTION MUST BE STAYED PENDING ARBITRATION**

Section 3 of the FAA provides that where, as here, a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

**CONCLUSION**

For the foregoing reasons, EIS respectfully requests that the Court grant this Motion, enter an order directing Plaintiff to arbitrate her claims against EIS, and stay this action as to EIS pending the completion of arbitration.

**CERTIFICATION**

After consultation between the parties, they were unable to reach an agreement. The conference occurred via teleconference on July 9, 2024. The names of participating counsel are David Sandefer for EIS and James Ristvedt for Plaintiff.

| | |
|---|---|
| Dated: July 17, 2024 | Respectfully submitted, |

By: */s/ Erin Palmer Polly*
Erin Palmer Polly (#22221)
erin.polly@klgates.com
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
(615) 780-6700
(615) 780-6799

Counsel for Defendant
Experian Information Solutions, Inc.

### CERTIFICATE OF SERVICE

    I certify that a true and exact copy of the foregoing has been served upon Filing Users via the electronic filing system and on other counsel via U.S. Mail, first-class postage prepaid, this July 17, 2024, on the following:

| | |
|---|---|
| Tarek N. Chami<br>Consumer Attorneys<br>22000 Michigan Avenue, Suite 200<br>Dearborn, Michigan 48124 | Lauren Paxton Roberts<br>Stites & Harbison, PLLC<br>401 Commerce Street, Suite 800<br>Nashville, Tennessee 37219 |

    */s/ Erin Palmer Polly*

319446613.1