IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | |
|---|---|
| BIANCA MICHELLE JONES, | ) |
|     Plaintiff, | ) |
| v. | ) Civil Action No. 2:24-cv-02325-SHL-CGC |
| EXPERIAN INFORMATION SOLUTIONS, INC., NELNET SERVICING, LLC, | ) JURY DEMAND |
|     Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF NELNET SERVICING, LLC'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, Nelnet Servicing, LLC ("Nelnet"), submits its Memorandum of Law in support of its Motion for Summary Judgment dismissing the Complaint (Doc. 1) filed by Plaintiff Bianca Michelle Jones ("Plaintiff" or "Jones") as follows:

### BACKGROUND AND SUMMARY OF GROUNDS

Nelnet is entitled to judgment as a matter of law because the undisputed facts show that Nelnet reported accurately. Alternatively, Nelnet is entitled to summary judgment on Plaintiff's theory of damages, which is unsupported by the evidence and nothing more than speculation.

Plaintiff has several student loans from United States Department of Education (the "DOE"). Nelnet was her loan servicer until February 3, 2023 when the DOE transferred the servicing of Plaintiff's loans to another servicer, Higher Education Loan Authority of the State of Missouri ("MOHELA"). Prior to the servicing transfer, Nelnet submitted its final round of monthly credit reporting to the three national consumer reporting agencies (the "CRAs"), including former defendant Experian Information Solutions, Inc. ("Experian"). In its final credit reporting, Nelnet reported the balances owed under the Loans as of January 31, 2023 prior to transfer.

There is no dispute that Plaintiff owed the reported balances to Nelnet on January 31, 2023. Plaintiff alleges that, later in 2023, she discovered Experian was reporting balances on her student loan accounts for both Nelnet and MOHELA. Despite Nelnet balances being reported as of January 31, 2023, Plaintiff submitted disputes to Experian for the Nelnet tradelines. Plaintiff contends that Nelnet failed to conduct a reasonable investigation into her disputes and then modify, delete, or permanently block the disputed information in compliance with the Fair Credit Reporting Act ("FRCA"). Plaintiff alleges that Nelnet, instead, continued to report that Plaintiff's loans had balances with Nelnet, which had a chilling effect on her applying for a mortgage loan.

But it is undisputed that Nelnet did not continue to report her loans and that its last report was Plaintiff's loan balances as of January 31, 2023 prior to transfer. In response to Plaintiff's disputes, Nelnet verified Plaintiff's loan information as of January 31, 2023, the same as last report by Nelnet. An essential element of an FCRA claim is inaccuracy; that a furnisher reported inaccurate information after conducting an investigation. Nelnet's reporting was factually accurate as of its last reporting; indeed, there is no dispute that Plaintiff owed Nelnet for her student loans on January 31, 2023. This reporting is not false (or "patently incorrect"), and federal law does not obligate a furnisher of credit information to modify its historical credit reporting based upon subsequent events.

Furthermore, any contention Nelnet's reporting was materially misleading to creditors (and thus, actionable) is nothing more than speculation, because Plaintiff has offered no proof that a creditor was actually misled. In fact, Plaintiff never applied for a mortgage loan and has offered no documentation or evidence of adverse credit consequences that resulted from Nelnet's reporting.

For a credit harm theory of damages to survive summary judgment, there must be evidence that the consumer's credit score was lowered, and that the lowered credit score itself led to actual

2

credit denials or the consumer securing credit on less favorable terms. Plaintiff offers no proof of credit harm, let alone any adverse credit consequences resulting from Nelnet's reporting. She only believes harm to her credit occurred, which is insufficient to survive a motion for summary judgment. It is further speculative whether any alleged violation of the FCRA resulted in harm to Plaintiff's credit when considering that the process of linking tradelines upon a servicing transfer, which would have made Nelnet's tradeline disappear from Plaintiff's credit reports if done correctly, was not Nelnet's responsibility.

Because Nelnet's reporting was accurate (neither "patently incorrect" nor misleading), Nelnet respectfully requests the Court to grant judgment as a matter of law in favor of Nelnet, dismissing Plaintiff's claims *with prejudice*. In the alternative, Nelnet respectfully requests the Court enter summary judgment on Plaintiff's damages theory to narrow the issues for trial.

## SUMMARY OF UNDISPUTED MATERIAL FACTS

Beginning in 2011, Plaintiff took out federal student loans with the DOE to fund her education. (**Ex. 1-1**: Master Promissory Notes.) On August 20, 2011, Nelnet began servicing Plaintiff's federal student loans (the "Loans"). (Ex. 1, ¶ 6); (**Ex. 1-2**: Servicing History, Nelnet 000541.) During its time as Plaintiff's loan servicer, Nelnet reported information about the Loans to the three major consumer reporting agencies ("CRAs"), which includes Experian. (**Ex. 1**, ¶ 6); (**Ex. 1-2**: Servicing History.)

On February 3, 2023, servicing of Plaintiff's then twenty-two (22) loans (collectively, the "Loans") transferred from Nelnet to MOHELA. (**Ex. 1-3**: Account Summary, Nelnet 000467 - 470); (**Ex. 1-4**: Payment History, Nelnet 000505 - 531); (**Ex. 1-5**: Notice of Servicing Transfer, Nelnet 000001 - 2.) On January 31, 2023, prior to the servicing transfer, Plaintiff owed the following balances for each of the twenty-two Loans:

3

| | |
|---|---|
| Loan 1: $3,728.06 | Loan 12: $3,624.14 |
| Loan 2: $3,297.49 | Loan 13: $1,294.33 |
| Loan 3: $1,065.15 | Loan 14: $1,142.28 |
| Loan 4: $1,582.84 | Loan 16: $8,757.62[1] |
| Loan 5: $5,958.17 | Loan 17: $5,358.52 |
| Loan 6: $3,116.70 | Loan 18: $18,733.29 |
| Loan 7: $6,346.97 | Loan 19: $10,075.22 |
| Loan 8: $6,021.10 | Loan 20: $3,493.52 |
| Loan 9: $2,514.52 | Loan 21: $18,170.67 |
| Loan 10: $1,906.28 | Loan 22: $3,505.00 |
| Loan 11: $1,089.30 | Loan 23: $2,720.00 |

(**Ex. 1-4**: Payment History, Nelnet 000506 - 531.)

## Method of Reporting Transferred Loans

At the time of the servicing transfer for Plaintiff's Loans, an "L1 Segment" was a preferred option for reporting loans that transferred servicing. (**Ex. 2**: Nelnet Depo., p. 60:10 - 60:14.) The "intent of the L1 Segment is to perpetuate a continual tradeline" between the two tradelines of the transferor ("sending") entity and the transferee ("receiving") entity. (**Ex. 3**: Experian Depo., pp. 53:2 - 55:3, 100:14 - 100:22.)

The "L1 Segment is only reported by the receiving or surviving" servicer following a transfer. (**Ex. 3**: Experian Depo., pp. 41:12 - 42:13; 101:14 - 101:19.) Upon "the receiving furnisher reporting the L1 Segment" and following the L1 segment process correctly, the sending servicer's tradeline "disappears from the credit report[.]" (**Ex. 3**: Experian Depo., pp. 100:14 -

---

[1] Loan 15 had been canceled before the servicing transfer. (**Ex. 1-3**: Account Summary, Nelnet 000469); (**Ex. 1-4**: Payment History, Nelnet 000523.)

4

101:19.)

Upon transfer of the Loans to MOHELA, Nelnet ceased reporting to the CRAs. (**Ex. 1**, ¶ 6); (**Ex. 1-2**: Servicing History, Nelnet 000665 - 66); (**Ex. 2**: Nelnet Depo., pp. 87:25 - 88:4.) Nelnet's final credit reporting for the Loans provided account information for the Loans as of January 31, 2023. (**Ex. 1**, ¶ 6); (**Ex. 1-2**: Servicing History, Nelnet 000665 - 66); (**Ex. 2**: Nelnet Depo., pp. 87:25 - 88:4.)

### Response to Plaintiff's Disputes

From September 2023 to March 2024, after the servicing transfer to MOHELA, Experian sent Nelnet six sets of Automated Credit Dispute Verification ("ACDV") forms where Plaintiff disputed the reporting of the Loans. (**Ex. 1-2**: Servicing History, Nelnet 000667 - 720.)

On September 25, 2023, Experian sent Nelnet the first set of ACDVs. (**Ex. 1-2**: Servicing History, Nelnet 000667 - 676); (**Ex. 4**: Experian Jones 000179 - 193.) On August 11, 2023, Nelnet responded to these ACDVs verifying the following balances for the Loans in dispute[2] as of January 31, 2023:

| | |
|---|---|
| Loan 1: $3,728 | Loan 10: $1,906 |
| Loan 3: $1,065 | Loan 11: $1,089 |
| Loan 4: $1,582 | Loan 12: $3,624 |
| Loan 5: $5,958 | Loan 13: $1,294 |
| Loan 6: $3,116 | Loan 14: $1,142 |
| Loan 7: $6,346 | Loan 16: $8,757 |
| Loan 8: $6,021 | Loan 17: $5,358 |
| Loan 9: $2,514 | |

---

[2] This first set of ACDVs did not include disputes for Loans 2 and Loans 18 through 23. (**Ex. 4**: Experian Jones 000123 - 144.)

5

(**Ex. 4**: Experian Jones 000179 - 193.)

On October 18, 2023, Experian sent Nelnet the second set of ACDVs. (**Ex. 1-2**: Servicing History, Nelnet 000676 - 689); (**Ex. 4**: Experian Jones 000123 - 144); (*see also* **Ex. 1-6**: Nelnet ACDVs.) On October 28, 2023, Nelnet responded to these ACDVs verifying the following balances for the Loans as of January 31, 2023:

| | |
|---|---|
| Loan 1: $3,728 | Loan 12: $3,624 |
| Loan 2: $3,297 | Loan 13: $1,294 |
| Loan 3: $1,065 | Loan 14: $1,142 |
| Loan 4: $1,582 | Loan 16: $8,757 |
| Loan 5: $5,958 | Loan 17: $5,358 |
| Loan 6: $3,116 | Loan 18: $18,733 |
| Loan 7: $6,346 | Loan 19: $10,075 |
| Loan 8: $6,021 | Loan 20: $3,493 |
| Loan 9: $2,514 | Loan 21: $18,170 |
| Loan 10: $1,906 | Loan 22: $3,505 |
| Loan 11: $1,089 | Loan 23: $2,720 |

(**Ex. 4**: Experian Jones 000123 - 144); (*see also* **Ex. 1-6**: Nelnet ACDVs.)

On November 14, 2023, Experian sent Nelnet the third set of ACDVs. (**Ex. 1-2**: Servicing History, Nelnet 000690 - 699); (**Ex. 4**: Experian Jones 000101 - 122); (*see also* **Ex. 1-6**: Nelnet ACDVs.) On November 22, 2023, Nelnet responded to these ACDVs verifying the same balances for the Loans as of January 31, 2023. (**Ex. 4**: Experian Jones 000101 - 122); (*see also* **Ex. 1-6**: Nelnet ACDVs.)

On February 19, 2024, Experian sent Nelnet the fourth set of ACDVs. (**Ex. 1-2**: Servicing

History, Nelnet 000700 - 707); (**Ex. 4**: Experian Jones 000208 - 228); (*see also* **Ex. 1-6**: Nelnet ACDVs.) On February 22, 2024, Nelnet responded to these ACDVs verifying the same balances for the Loans in dispute[3] as of January 31, 2023. (**Ex. 4**: Experian Jones 000208 - 228); (*see also* **Ex. 1-6**: Nelnet ACDVs.)

On March 18, 2024, Experian sent Nelnet the fifth set of ACDVs. (**Ex. 1-2**: Servicing History, Nelnet 000707 - 711); (**Ex. 4**: Experian Jones 000198 - 207); (*see also* **Ex. 1-6**: Nelnet ACDVs.) On March 20, 2024, Nelnet responded to these ACDVs verifying the same balances for the Loans in dispute[4] as of January 31, 2023. (**Ex. 4**: Experian Jones 000198 - 207); (*see also* **Ex. 1-6**: Nelnet ACDVs.)

On March 22, 2024, Experian sent Nelnet the sixth set of ACDVs. (**Ex. 1-2**: Servicing History, Nelnet 000711 - 720); (**Ex. 4**: Experian Jones 000229 - 250); (*see also* **Ex. 1-6**: Nelnet ACDVs.) On April 2, 2024, Nelnet responded to the ACDV verifying the balances for the Loans disputed as "accurate as of last submission." (**Ex. 4**: Experian Jones 000229 - 250); (*see also* **Ex. 1-6**: Nelnet ACDVs.) Nelnet's final credit reporting for the Loans was on January 31, 2023. (**Ex. 1**: Stithem Declaration, ¶ 6); (**Ex. 1-2**: Servicing History, Nelnet 000665 - 66); (**Ex. 2**: Nelnet Depo., pp. 87:25 - 88:4); (*see also* **Ex. 1-6**: Nelnet ACDVs.)

### Plaintiff's Credit During The Disputed Reporting

Plaintiff "believes that had Nelnet accurately reported to the credit reporting agencies that the Nelnet Accounts were not open and that she did not owe a balance on her Nelnet Accounts, she would have been approved for credit and/or approved for credit and loans with better terms." (**Ex. 5**: Plaintiff Inter. Resp., p. 19.) From 2023 through 2024, Plaintiff did not apply for a mortgage

---

[3] This fourth set of ACDVs did not include a dispute for Loan 3. (**Ex. 4**: Experian Jones 000208 - 228.)

[4] This fifth set of ACDVs did not include disputes for Loans 4, 7, 8, 10, 11, 12, 13, 19, 20, and 21.

7

loan. (**Ex. 6**: Jones Depo., pp. 118:9 - 119:7.) On or about October 15, 2023, Plaintiff applied and was approved for a secured credit card with Discover, but does not know if using this credit card helped build her credit. (**Ex. 5**: Plaintiff Inter. Resp., p. 18); (**Ex. 6**: Jones Depo., pp. 61:14 - 64:2). On or about December 12, 2023, Plaintiff's credit score was reported by Experian as 623, Trans Union as 632, and Equifax as 607. (**Ex. 5**: Plaintiff Inter. Resp., p. 14.) Plaintiff is unaware of any other credit scores she has had since 2021. (**Ex. 5**: Plaintiff Inter. Resp., p. 14.) Plaintiff has no documentation of any adverse action notice from any creditor from January 1, 2023 to the present. (**Ex. 7**: Jones 000001 through 000477.)

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.*, at 325. This in turn may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727, at 35 (2d ed. Supp. 1996). In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Walbourn v. Erie County Care Facility*, 150 F.3d 584, 588 (6th

Cir. 1998); *McNeail-Tunstall v. Marsh USA*, 307 F. Supp. 2d 955, 965–66 (W.D. Tenn. 2004).

However, "[i]n response, the nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.' The mere existence of a scintilla of evidence in support of the nonmovant's position will not suffice to avoid summary judgment." *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018) (quoting *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993)). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## **LAW AND ARGUMENT**

Nelnet is entitled to judgment as a matter of law because the undisputed facts demonstrate its reporting was accurate and, in the alternative, that Plaintiff cannot demonstrate damages as a result of Nelnet's reporting and investigation. The sole claim against Nelnet is an alleged failure to comply with 15 U.S.C. § 1681s-2(b) ("Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer"). (Doc. 1, PageID 21.)

This section of the FCRA "allows a consumer to sue a data furnisher if the furnisher provides 'incomplete or inaccurate' information to a CRA and then refuses to 'delete' or 'modify' that information in response to a consumer complaint." *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 943 (6th Cir. 2020) (quoting 15 U.S.C. § 1681s-2(b)(1)).[5] Plaintiff alleges that Nelnet failed

---

[5] Under 15 U.S.C. § 1681s-2(b), the relevant duties of a furnisher of credit reporting information are:

> (1) After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –
> (A) conduct an investigation with respect to the disputed information;

to conduct a reasonable investigation of Plaintiff's disputes under Section 1681s-2(b), and therefore, Nelnet is liable for willful or negligent noncompliance with the FCRA.[6] (Doc. 1, PageID 21-22.) Sections 1681n and/or 1681o of the FCRA provide civil liability against furnishers for violation of Section 1681s-2(b) and allow for the recovery of "any actual damages sustained by the consumer as a result of the failure[.]" 15 U.S.C. §§ 1681n, 1681o. As demonstrated below, Plaintiff cannot and has not demonstrated Nelnet's reporting was inaccurate and, in the alternative, that she has suffered damages as a result of any alleged violation of Section 1681s-2(b).

1. **Nelnet is entitled to judgment as a matter of law because its reporting of the Loans was accurate.**

Plaintiff cannot demonstrate inaccurate reporting as an essential element of her FCRA claim. Nelnet's reporting was not false and there is no evidence that its reporting actually misled a creditor. In fact, Nelnet did not "provide[] 'incomplete or inaccurate' information to a CRA" that required deletion or modification in response to Plaintiff's disputes, because it had not reported Plaintiff's Loans after January 31, 2023 and prior to transfer. *Twumasi-Ankrah*, 954 F.3d at 943 (quoting 15 U.S.C. § 1681s-2(b)(1)).

Rather, Nelnet reported accurate account information for the Loans as of January 31, 2023. An essential element of an FCRA claim against a furnisher is that the furnisher's unreasonable

---

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
(C) report the results of the investigation to the consumer reporting agency
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly – (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

[6] 15 U.S.C. § 1681n (willful violation) and 15 U.S.C. § 1681o (negligent violation).

investigation led to the reporting of inaccurate information. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 629 (6th Cir. 2018) (A "threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)."). "In other words, before a plaintiff can proceed with a failure to perform a reasonable investigation claim, the plaintiff must establish that there is an inaccuracy in the credit reporting." *Scott v. Equifax Info. Servs., LLC*, No. CV 19-11646, 2020 WL 5960731, at *5 (E.D. Mich. Oct. 8, 2020). "This order of proof makes sense: if there is no inaccuracy, then the reasonableness of the investigation is not in play." *Suluki v. Credit One Bank, N.A.*, 666 F.Supp.3d 403, 410 (S.D.N.Y. 2023) (citing *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022)). "To meet this threshold showing, a plaintiff can show that the information provided is false or that it contains a material omission or creates a materially misleading impression." *Pittman*, 901 F.3d at 630; *see also Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 943 (6th Cir. 2020) (accuracy not only includes "'false information,' but also 'correct information' that nevertheless 'create[s] a materially misleading impression.'").

Plaintiff cannot prove Nelnet's reporting was false or "patently incorrect." *Twumasi-Ankrah*, 954 F.3d at 942 (quoting *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)) In response to each of Plaintiff's disputes, Nelnet verified that the information it had reported, which had been reported as of January 31, 2023, was accurate as of that date. (**Ex. 4**: Experian Jones 000101 - 144, 179 - 250.) Plaintiff cannot dispute (and has not disputed) that she owed Nelnet for balances reported as of January 31, 2023. (*Compare* Ex. **1-4**: Payment History, Nelnet 000506 - 531 *with* **Ex. 4**: Experian Jones 000101 - 144, 179 - 250.)

As a matter of law, the FCRA does not obligate a furnisher to alter "a report that was accurate at the time" when the furnisher "is not currently reporting inaccurate information[.]" *Terhune v. Bank of Am., N.A.*, No. 1:18-CV-1440-WTL-MJD, 2018 WL 6249982, at *2 (S.D. Ind.

11

Nov. 28, 2018); *see also Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 610 (E.D. Pa. 2008) (in responding to an ACDV the furnisher "concluded that all the information reported . . . was 'accurate as of date reported'" fulfilling its obligations under the FCRA).[7] Therefore, reporting the balances for the Loans as of January 31, 2023 was factually accurate (or not "patently incorrect"), and the FCRA did not obligate Nelnet to alter or delete its accurate, historical reporting. *See Euring v. Equifax Info. Servs., LLC*, No. 19-CV-11675, 2020 WL 1508344, at *9 (E.D. Mich. Mar. 30, 2020) (finding no "false" reporting when "the monthly payment amounts of $46 and $255 are the correct amounts when [the loan] accounts were active").

Since Plaintiff cannot prove Nelnet's reporting was "patently incorrect," Plaintiff must prove Nelnet's reporting was "misleading in such a way and to such an extent that it [could have been] expected to have an adverse effect [on the consumer]." *Twumasi-Ankrah*, 954 F.3d at 942 (quoting *Dalton*, 257 F.3d at 415) (modifications in original); *Cowley v. Equifax Info. Servs., LLC*, No. 218CV02846TLPCGC, 2019 WL 5310205, at *2 (W.D. Tenn. Oct. 21, 2019) (if the reporting is factually accurate, "Plaintiff's only option for recourse is to show that it materially misled another creditor."). Plaintiff cannot meet this burden.

First, "there is nothing false or materially misleading" when reporting "clearly historical information" for a loan. *Scott v. Equifax Info. Servs., LLC*, No. CV 19-11646, 2020 WL 5960731, at *4 (E.D. Mich. Oct. 8, 2020) (analyzing reporting of monthly payment for closed account and comparing monthly payment to highest balance as historical information). Nelnet's final reporting, verified in response to Plaintiff's disputes, was an accurate report of the account information for

---

[7] *Anderson v. Experian Info. Sols., Inc.*, No. 08-CV-5151, 2009 WL 3644923, at *1–6 (D. Minn. Nov. 2, 2009), *aff'd sub nom Anderson v. EMC Mortg. Corp.*, 631 F.3d 905 (8th Cir. 2011) (furnisher had no obligation to alter historic reporting that accurately reflected a missed payment even though the plaintiff made an additional payment five months later to bring the account current).

12

Loans as of January 31, 2023 and cannot be materially misleading. (*Compare* Ex. **1-4**: Payment History, Nelnet 000506 - 531 *with* **Ex. 4**: Experian Jones 000101 - 144, 179 - 250.)

Plaintiff has also failed to demonstrate Nelnet's reporting was misleading for another, independent reason. She has no evidence that a creditor was actually misled by Nelnet's reporting. During the time of the disputed reporting, Plaintiff never applied for a mortgage loan and did not have any adverse action notices from creditors. (**Ex. 6**: Jones Depo., pp. 118:9 - 119:7); (**Ex. 7**: Jones 000001 through 000477.) Courts in this Circuit do not find reporting misleading (and thus, grant summary judgment for FCRA defendants) when a plaintiff has failed to produce evidence that a creditor was actually misled by disputed reporting. *Euring*, 2020 WL 1508344 at *9 (granting summary judgment and rejecting Plaintiff's personal opinion to support claim of inaccuracy); *Elsady v. Rapid Global Bus. Sols., Inc.*, No. 09-cv-11659, 2010 WL 2740154, at *7 (E.D. Mich. July 12, 2010) (finding a "plaintiff's mere assertion that a report was misleading, or even his proof the a lay person would be mislead, is insufficient to establish that a report was misleading and, therefore, inaccurate. At a minimum, a plaintiff must prove that a creditor or consumer of credit reports would be mislead. When the recipient was not mislead, such a showing will be extremely difficult.").

Indeed, "a report is accurate so long as the recipients are not actually mislead, even if the consumer would prefer that an incident be reported in a different fashion." *Elsady*, 2010 WL 2740154, at *7 (citing *Sepulvado v. CSC Credit Servs.*, Inc., 158 F.3d 890, 893 (5th Cir. 1998); *see Twumasi-Ankrah*, 954 F.3d at 943 (citing *Sepulvado*, 158 F.3d at 895–96 as Fifth Circuit decision adopting "inaccurate or misleading" standard).

Plaintiff merely believes Nelnet's reporting would have misled a creditor,[8] but "the Sixth

---

[8] (**Ex. 5**: Plaintiff Inter. Resp., p. 19.)

Circuit has repeatedly found that a personal opinion, by itself, cannot support an inaccuracy claim under the FCRA." *Cowley*, 2019 WL 5847851 at *4 (citing *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001); *Bailey v. Equifax Info. Servs., LLC*, No. 13-cv-10377, 2013 WL 3305710 (E.D. Mich. July 1, 2013); *Elsady*, 2010 WL 2740154); *see Shaw v. Equifax Info. Sols., Inc.*, 204 F. Supp. 3d 956, 961 (E.D. Mich. 2016) (citing *Elsady*, 2010 WL 2740154 at *7); *see also Walker v. Equifax Info. Servs., LLC*, No. 2:19-CV-12257, 2020 WL 13430010, at *3 (E.D. Mich. May 1, 2020) (emphasizing plaintiff's failure to allege "any creditor was misled"); *see also Smith v. Trans Union LLC*, No. 18-CV-13098, 2019 WL 2074594, at *3 (E.D. Mich. May 10, 2019) ("Plaintiff's mere speculation that the [reporting] was misleading, without more, is insufficient as a matter of law to establish a prima facie case of inaccuracy"). By relying upon her belief that the reporting was misleading, without proving that Nelnet's reporting actually misled a creditor, Plaintiff has "showed no inaccuracy here." *Cowley*, 2019 WL 5847851 at *4.

Nelnet never responded to ACDVs saying that account information for the Loans was accurate as of the date it responded to Plaintiff's disputes. (**Ex. 4**: Experian Jones 000101 - 144, 179 - 250.) Instead, Nelnet said the account information was reported accurate as of the last date of its reporting or "accurate as of last submission" (i.e., as of January 31, 2023). (**Ex. 4**: Experian Jones 000101 - 144, 179 - 250.) There is no dispute that the reporting as of January 31, 2023 was accurate. Because Plaintiff has not and cannot prove Nelnet's reporting was patently incorrect and has no proof that Nelnet's reporting of historical account information would have (let alone, actually) misled a creditor, Plaintiff cannot demonstrate Nelnet's reporting was false or misleading. Therefore, Plaintiff's FCRA claim must fail and Nelnet is entitled to judgment as a matter of law.

**2.     In the alternative, Nelnet is entitled to judgment as a matter of law because Plaintiff cannot prove damages as a result of any noncompliance with Section 1681s-2(b).**

Plaintiff cannot prove damages as a result of any alleged violation of Section 1681s-2(b). In an FCRA case, a plaintiff must show that a furnisher's failure to comply with the FCRA caused each instance of her damages. *Brown v. Wal-Mart Stores, Inc.*, No. 2:09-CV-2148DV, 2011 WL 13186547, at *5 (W.D. Tenn. July 27, 2011), *aff'd*, 507 F. App'x 543 (6th Cir. 2012) ("In order to maintain a claim under the FCRA, the plaintiff bears the burden of showing that he suffered actual damages as a result of the defendant's conduct." (citing *Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005) and 15 U.S.C. §§ 1681n and 1681o).

Courts have rejected FCRA claims where there is no proof that damages resulted from reporting, especially when there is evidence that a "denial of credit was due to something other than" reporting or a violation of the FCRA. *Cousin v. Trans Union Corp.*, 246 F.3d 359, 370 (5th Cir. 2001); *see Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d Cir. 1995) (rejecting "bare contention that [plaintiff] is entitled to damages . . . simply because he knew of an inaccurate and potentially damaging item in his credit report."). Specifically, an FCRA claim requires evidence that the plaintiff suffered real-world credit consequences *because* of the decrease in credit score, such as credit denials, a lowered credit limit, or the securing of credit but on less favorable terms. *See Basconcello v. Experian Info. Sols., Inc.*, No. 16-CV-06307-PJH, 2017 WL 1046969, at *11 (N.D. Cal. Mar. 20, 2017) (collecting cases); *Graham v. Sunnova Energy Interntional, Inc.*, No. 1:22-CV-0622 JLT BAM, 2024 WL 871858, at *10 (E.D. Cal. Feb. 28, 2024) (same); *Young v. Harbor Mortor Works, Inc.*, No. 2:07CV0031JVB, 2009 WL 187793, at *5 (N.D. Ind. Jan. 27, 2009) (same); *see also Garrett v. Trans Union, L.L.C.*, No. 2:04-CV-00582, 2006 WL 2850499, at *11 (S.D. Ohio Sept. 29, 2006) (conclusory allegations of emotional distress are not enough for damages without a causal relationship between the FCRA violation and the loss of credit). That is because, in the absence of those scenarios,

the negative effects of an allegedly lowered credit score do not actually cause any harm. *See id.*

Plaintiff has not met her burden to show she suffered actual credit consequences, such as a situation where a lowered credit score directly led to credit denials. In December 2023, Plaintiff's credit score was reported by Experian as 623, Trans Union as 632, and Equifax as 607, but she is unaware of any other credit scores since 2021 and does not know if her secured credit card helped build her credit. (**Ex. 5**: Plaintiff Inter. Resp., pp. 14, 18); (**Ex. 6**: Jones Depo., pp. 61:14 - 64:2.) There is no evidence in the record whatsoever that Plaintiff's credit score dropped at all, let alone as a result of Nelnet.

There is also no evidence of credit denials. Plaintiff never applied for a mortgage loan, was approved for a secured credit card with Discover, and has not produced any adverse action notices from creditors. (**Ex. 5**: Plaintiff Inter. Resp., p. 18); (**Ex. 6**: Jones Depo., pp. 61:14 - 64:2, 118:9 - 119:7); (**Ex. 7**: Jones 000001 through 000477.) Instead of asserting an actual credit denial, Plaintiff's theory is that she suffered credit harm because she felt "chilled" from applying for a mortgage loan during the time of reporting the disputed information. (Doc. 1, PageID 16.)

Federal courts have repeatedly rejected Plaintiff's theory damages; that she was "chilled" from applying for credit is speculation and not evidence of actual credit damages. *Garrett*, 2006 WL 2850499 at *12 (rejecting plaintiff's attempt to "recover damages based upon his speculation that he would have been unable to obtain credit had he sought it" without evidence of actual credit denial); *see also Cameron v. Greater New Orleans Fed. Credit Union*, 713 Fed. Appx. 238, 241 (5th Cir. 2018) (affirming grant of summary judgment that rejected theory of credit damages because there was no evidence that the consumer's applications resulted in credit denials); *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 833 (7th Cir. 2004) (affirming summary judgment on the issue of credit damages because "the record is devoid of any indication that a potential creditor denied

16

Wantz credit because of what Experian reported"); *Casella*, 56 F.3d at 475 (affirming summary judgment in favor of the defendant on the grounds that the plaintiff's "lost opportunity damages . . . were too speculative," despite evidence indicating that the plaintiff was "actively seeking to purchase a home" but "refrained from making any credit applications in order not to tarnish further his credit history.")); *Rosenberg v. LoanDepot, Inc.*, No. 21-CV-08719 (PMH), 2023 WL 1866871, at *5 (S.D.N.Y. Feb. 9, 2023) (rejecting theory of "a chilling effect on applications for future credit" because "allegations of possible future injury are not sufficient"); *Rambarran v. Bank of A., N.A.*, 609 F. Supp. 2d 1253, 1265 (S.D. Fla. 2009) (rejecting plaintiff's contention that a decision not to apply for credit due to "a concern that a rejected credit application would further harm his credit rating" was "too speculative to withstand summary judgment."); *Konter v. CSC Credit Servs.*, 606 F. Supp. 2d 960, 967 (W.D. Wis. 2009) (granting summary judgment because there was no evidence the plaintiff was denied credit or received higher interest rates).

These cases establish that an alleged fear of applying for credit is not an actionable harm. The FCRA was enacted to provide consumers with a remedy to redress the harms caused by inaccurate credit reporting. Therefore, when Plaintiff is alleging credit harm or adverse credit consequences, there must actually be credit harm in the form of credit denials, as otherwise, the alleged damages are based purely on speculation.

It is further speculative that Nelnet's alleged FCRA violation *resulted* in any harm to Plaintiff's credit when considering the undisputed fact that it was not Nelnet's responsible to report the L1 Segment; which, if done correctly, would have make Nelnet's tradeline disappear from Plaintiff's credit report. (**Ex. 3**: Experian Depo., pp. 41:12 - 42:13; 101:14 - 101:19.) The true source of Plaintiff's alleged harm was the failure to process the L1 Segment. In other words, Plaintiff's alleged "denial of credit was due to something other than" Nelnet's alleged violation of

17

the FCRA. *Cousin*, 246 F.3d at 370.

In the alternative, because it is undisputed that Plaintiff cannot prove damages resulting from any alleged violation of the FCRA, Nelnet asks the Court to enter summary judgment on Plaintiff's alleged credit harm damages theory to narrow the scope of the alleged damages case for trial.

## CONCLUSION

Based upon the foregoing, Nelnet respectfully requests that the Court grant it judgment as a matter of law, dismissing Plaintiff's claims, *with prejudice*. In the alternative, Nelnet asks the Court to enter summary judgment on Plaintiff's alleged credit harm damages theory to narrow the scope of the alleged damages case for trial.

Respectfully submitted,

*s/Joseph V. Ronderos*
Joseph Ronderos (BPR No. 036179)
STITES & HARBISON PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
Telephone: (615) 782-2205
Email: jronderos@stites.com
*Counsel for Defendant Nelnet Servicing, LLC*

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on the 21st day of July, 2025, a true and exact copy of the foregoing was filed electronically with the Clerk's office and served via the Clerk's e-filing system and/or via email upon the parties listed below. The parties may also access this filing through the Court's electronic filing system.

| | |
|---|---|
| James Ristvedt<br>Mehak Rizvi<br>CONSUMER ATTORNEYS PLC<br>8245 N. 85th Way<br>Scottsdale, AZ 85258<br>Email: jristvedt@consumerattorneys.com<br>Email: mrizvi@consumerjustice.com<br>*Counsel for Plaintiff Bianca Michelle Jones* | Tarek N. Chami<br>CONSUMER ATTORNEYS<br>22000 Michigan Ave., Suite 200<br>Dearborn, MI 48124<br>Email: tchami@consumerattorneys.com<br>*Counsel for Plaintiff Bianca Michelle Jones* |

                *s/Joseph V. Ronderos*
                Joseph V. Ronderos